IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITHROLLIN THOMPSON | : | CIVIL ACTION |
| | : | |
| v. | : | No. 20-756 |
| | : | |
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY | : : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                **November 16, 2020**

Plaintiff Keithrollin Thompson brings this action against his former employer Southeastern Pennsylvania Transportation Authority (SEPTA) alleging constitutional violations due to his firing after he hit a pedestrian while operating a bus. Thompson, an African American, alleges his firing violated the Equal Protection Clause because white bus operators who were in similar accidents were not terminated as a result of their accidents. He also alleges he was fired without procedural due process because SEPTA's grievance procedure is inherently biased. SEPTA moves to dismiss the Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Thompson fails to allege municipal liability on his equal protection claim and fails to allege his firing occurred without due process, the Court will grant SEPTA's motion and dismiss Thompson's Second Amended Complaint without prejudice.

**BACKGROUND**

Thompson first began working for SEPTA in 1994 as a maintenance worker. After completing trainings and working in other positions, Thompson became a SEPTA bus operator in 2009. Throughout his tenure as a bus operator, Thompson was a member of a union.

On July 3, 2018, Thompson operated a bus route near and around 33rd Street and Columbus Boulevard in Philadelphia. At approximately 12:30 a.m., Thompson hit a pedestrian with the bus

1

at the corner of 32nd and Tasker Streets. The pedestrian refused medical care and left the scene. A video on the bus captured the entirety of the accident.

After the accident, SEPTA conducted an investigation and in the interim, Thompson was relieved of his bus operator duties. SEPTA also initiated a three-step procedure to address the accident with Thompson. During this procedure, Thompson was represented by his union. First, on July 12, 2018, Thompson had an informal hearing with his supervisor Shwana Rogers. The union argued Thompson's accident should be deemed "preventable" rather than "chargeable." Rogers nonetheless designated the accident as chargeable, recommended Thompson be fired, and told Thompson "it was either me or you who would be fired." Second Am. Compl. ¶ 31.

Second, on August 13, 2018, Thompson received a formal hearing with Senior Director of Surface Transportation, Tom Marcucci. Thompson, who was represented by his union, argued there was insufficient evidence to charge him with several rule violations. Marcucci, however, upheld the classification of Thompson's accident as chargeable and issued a formal decision terminating Thompson on August 21, 2018.

Finally, Thompson appealed Marcucci's formal decision and requested a de novo hearing before the Labor Relations Manager. At that hearing, Thompson was again represented by his union, and SEPTA was represented by Marcucci. The Labor Relations Manager upheld Thompson's termination.

Thompson alleges the grievance process was tainted by Marcucci's alleged racial discrimination and bias. He specifically alleges Marcucci's attendance at his de novo hearing was in violation of SEPTA policy in which the Labor Relations Manager's hearing is required to be impartial. Thompson also alleges his termination was upheld despite a lack of evidence or explanation of charges against him.

Thompson alleges his firing was premised on racial discrimination because white bus operators who have been in similar accidents were not terminated as a result. Thompson alleges several manners in which white and non-white operators are treated differently with regard to accidents, and also cites to a recent case and opinion in which several instances of discrimination are listed. *See* Pl.'s Ex. D. Thompson alleges this case should have placed Jeffrey Kneuppel, the General Manager of SEPTA, on notice of racial discrimination of non-white bus operators. That case, however, involved allegations of sex discrimination. With regard to his termination and SEPTA's racially discriminatory treatment of non-white bus operators, Thompson alleges Marcucci, Kneuppel, and Michael Liberi, the Chief Officer of Surface Transportation, were final decisionmakers of SEPTA.

On February 10, 2020, Thompson filed a two-count Complaint alleging an equal protection claim and due process claim. He alleges he was fired due to Marcucci's racial bias towards non-white bus operators in violation of the Equal Protection Clause. He also alleges the three-step grievance procedure upholding his firing violated due process because it was improperly influenced and biased by Marcucci. SEPTA first moved to dismiss the Complaint, to which Thompson filed an Amended Complaint in response. SEPTA again moved to dismiss the Amended Complaint. Thompson then filed the Second Amended Complaint. SEPTA now moves to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**DISCUSSION**

The Court will grant SEPTA's motion to dismiss because Thompson fails to properly allege municipal liability against SEPTA and fails to allege he was fired without due process of law. To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The Court must accept all well-pleaded allegations as true and draw all reasonable inferences in Thompson's favor. *See Pearson v. Sec'y Dep't of Corr.*, 775F.3d 598, 604 (3d Cir. 2015).

Thompson's equal protection claim will be dismissed because he fails to allege SEPTA fired him pursuant to an unconstitutional municipal policy, custom, or practice as required by *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 659 (1978). For § 1983 purposes, SEPTA is treated as a municipality. *See Brown v. SEPTA*, 539 F. App'x. 25, 27 (3d Cir. 2013). In order to recover from a municipality under § 1983, a plaintiff must: (1) identify a policy or custom that deprived him or her of a federally protected right, (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and the plaintiff's injury. *See Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (citations omitted). A custom is a practice that is so permanent and well settled that it is virtually law. See id. An individual officer's decision can represent the official policy of the municipality only if the officer "possess[es] final authority to establish municipal policy with respect to the action ordered." *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). The fact that an official has discretion in the exercise of a particular functions does not give rise to municipal liability. *See id.* at 481–82. The official must also be responsible for establishing the final policy respecting such activity. *See id.* at 482.

4

To the extent Thompson alleges SEPTA has a policy of discriminating against non-white bus operators, he has failed to allege conduct by an official SEPTA policymaker. At best, Thompson alleges SEPTA Senior Director Tom Marcucci is a final decisionmaker for SEPTA with regards to terminations. However, his allegation is undermined by his other allegations in the Second Amended Complaint.

In fact, Thompson alleges that Marcucci's racially discriminatory termination decision was reviewed by the Labor Relations Manager and was thus not final or unreviewable. Specifically, SEPTA uses a three-step grievance procedure which includes (1) an informal hearing in which a grievant is made aware of the charges against him and recommended discipline, (2) a formal hearing in which evidence is presented and discipline is imposed, and (3) a de novo hearing before the Labor Relations Manager. Marcucci only conducted the formal hearing at the second step. *See* Am. Compl. ¶ 39–43. Although Thompson alleges Marcucci influenced the individual who held his informal hearing at step one, he fails to allege how Marcucci had final unreviewable authority when Marcucci's decision was ultimately reviewed by the Labor Relations Manager at step three. Also, even though Thompson alleges Marcucci's presence at the final hearing tainted the Labor Relations Manager's final decision, he still fails to allege how his presence at the hearing turned him into a final policymaker. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010) (affirming district court's dismissal of Monell claim because plaintiff did not "allege what action [an individual] took that could fairly be said to be policy"). On this same note, Thompson alleges Marcucci's presence at the final hearing was in violation of SEPTA's policies and customs, not pursuant to. *See* Second Am. Compl. ¶ 53–54. Therefore, taking Thompson's allegations as true, he fails to state a claim for municipal liability based on Marcucci's alleged final decisionmaking authority. *See Kelty v. City of Philadelphia*, No. 16-0306, 2016 WL 8716437, at *4 (E.D. Pa. June

5

10, 2016) (dismissing Monell claim because plaintiff failed to allege conduct by a municipal policymaker).

Thompson alternatively alleges SEPTA's former General Manager, Jeffery Knueppel and Chief Officer of Surface Transportation, Michael Liberi were final policymakers and should have known about the racially disparate manner in which SEPTA treated non-white bus operators. However, Thompson fails to allege how Kneuppel and Liberi were involved in his termination at all or how they created policy related to racially discriminatory terminations of bus operators. Thompson only alleges Knueppel is the General Manager and oversees all operations and Liberi is the senior executive in charge of surface transportation.[1] But Thompson must allege that they are responsible for the specific policy and activity that caused his constitutional injury— terminating non-white bus operators because of their race. *See McTernan v. City of York*, 564 F.3d 636, 659 (3d Cir. 2009) (affirming district court's dismissal of Monell claim because plaintiff failed to allege the identified policymaker knew of or directed the unconstitutional policy). Insofar as Thompson alleges Knueppel and Liberi should have known about SEPTA's alleged policy of race discrimination due to a prior discrimination case, the case Thompson references was premised on sex discrimination. And Thompson fails to allege how the case put Knueppel and Liberi on notice of a policy or custom related to race discrimination.

Because Thompson has not alleged a policy, custom, or practice, or that the individual responsible for his termination established the final policy for SEPTA, the Second Amended Complaint's factual allegations are insufficient to allege municipal liability against SEPTA. *See Braddock v. SEPTA*, No. 13-6171, 2014 WL 2764862, at *3–4 (E.D. Pa. June 18, 2014)

---

[1] Thompson only alleges Liberi was copied on Marcucci's formal opinion upholding Thompson's termination. *See* Second Am. Compl. ¶ 46.

(dismissing the plaintiff's complaint against SEPTA because the plaintiff failed to allege a formal policy of discrimination or a policy created by a decision or ratification of a decision by an individual with policymaking authority).

Thompson's due process claim will be dismissed because he failed to allege SEPTA's grievance and arbitration procedure provided insufficient due process. The Third Circuit has held SEPTA's three-step grievance and arbitration procedure is adequate for due process purposes. *See Dykes v. SEPTA*, 68 F.3d 1564, 1571–72 (3d Cir. 1995). In the Second Amended Complaint, Thompson alleges his grievance was processed through three levels of the grievance procedure required by the collective bargaining agreement between SEPTA and the union. Although Thompson makes no specific allegation, it appears the union declined to pursue Thompson's claim in arbitration. *See* Ex. C (the Labor Relations Manager informing Thompson that SEPTA preserved certain defenses should the case proceed to arbitration). The availability of the arbitration procedure alone satisfies due process. *See Harris v. Se. Pa. Transp. Auth.*, 205 F. App'x 39, 41 (3d Cir. 2006) (affirming district court's dismissal of due process claim because "SEPTA's grievance/arbitration procedure [is] adequate for due process purposes . . . and there [was] no claim that SEPTA did not follow those procedures").

Nevertheless, Thompson argues the grievance process was improperly influenced by Marcucci in violation of due process. It is well settled that where a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, those procedures satisfy due process requirements even if the hearing was inherently biased. *See Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir. 1983). Even when a plaintiff alleges the defendants deprived him both of a meaningful hearing and arbitration, the Third Circuit has held "the administrative process in place has incorporated safeguards adequate to resolve these allegations in a manner

7

consistent with the demand of due process." *Dykes*, 68 F.3d at 1572. Here, SEPTA followed its three-step grievance procedure. As a result, the Second Amended Complaint's factual allegations are inadequate to state a claim for violation of due process. *See Harris*, 205 F. App'x at 41 (affirming the dismissal of due process claim because SEPTA followed its grievance procedure).

To the extent Thompson alleges SEPTA failed to explain the evidence or give him a meaningful opportunity to respond to the charges against him, these allegations are undermined by the grievance documents he attached to the Second Amended Complaint. The grievance documents show each level of the grievance procedure was heard by a different SEPTA manager, and the SEPTA Labor Relations Manager conducted an independent review of the previous grievance step. The grievance documents also list the violations and charges against Thompson and describe Thompson's defense to each one. *See* Exs. A–C. Considering each document summarizes Thompson's defense, the only inference created by the documents is that Thompson was provided the opportunity to be heard and to present evidence, and did so. *See id.* As for the evidence used to support Thompson's termination, the grievance documents explicitly state the evidence the managers relied upon. *See* Ex. B. Although Thompson alleges the evidence was incomplete or biased, the grievance documents show the managers relied upon a video of the accident, in addition to other evidence, to support Thompson's charges and termination. *See id.* Ex. C ("The Hearing Officer has reviewed the video of the incident and concurs with the Formal Hearing Officer's conclusion . . . ."). Thompson thus fails to allege sufficient facts that would support his allegation that the grievance process did not provide him with due process.

**CONCLUSION**

Because Thompson fails to allege *Monell* liability on his equal protection claim and fails to allege a due process claim, the Court will dismiss both claims without prejudice. Thompson will

be granted leave to file an amended complaint to cure the deficiencies identified in this Memorandum. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint…. the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.").

An appropriate order follows.

BY THE COURT:

 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.