IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITHROLLIN THOMPSON | : | CIVIL ACTION |
| | : | |
| v. | : | No. 20-756 |
| | : | |
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY | : : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                 **June 14, 2021**

Plaintiff Keithrollin Thompson brings this action against his former employer Southeastern Pennsylvania Transportation Authority (SEPTA) alleging constitutional violations due to his firing after he hit a pedestrian while operating a bus. Thompson, an African American, alleges his firing violated the Equal Protection Clause because white bus operators who were in similar accidents were not terminated as a result of their accidents. He also alleges he was fired without procedural due process because SEPTA's grievance procedure is inherently biased. After the Court dismissed Thompson's claims without prejudice, Thompson filed the Third Amended Complaint alleging essentially the same facts but naming new individual Defendants. Thompson, however, has since voluntarily dismissed his claims against the individual Defendants leaving SEPTA as the only remaining Defendant. SEPTA now moves to dismiss the Third Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Thompson's amended allegations still fail to allege municipal liability for his equal protection claim or that his firing occurred without due process, the Court will grant SEPTA's motion and dismiss Thompson's Third Amended Complaint with prejudice.

**BACKGROUND**

Thompson first began working for SEPTA in 1994 as a maintenance worker. After completing trainings and working in other positions, Thompson became a SEPTA bus operator in

2009. Throughout his tenure as a bus operator, Thompson was a member of a union. Thompson was an exemplary employee. *See* Third Am. Compl. ¶ 30.

On July 3, 2018, Thompson operated a bus route near and around 33rd Street and Columbus Boulevard in Philadelphia. At approximately 12:30 a.m., Thompson hit a pedestrian with the bus at the corner of 32nd and Tasker Streets. The pedestrian refused medical care and left the scene. A video on the bus captured the entirety of the accident.

After the accident, SEPTA conducted an investigation and in the interim, Thompson was relieved of his bus operator duties. SEPTA also initiated a three-step procedure to address the accident with Thompson. Throughout this procedure, Thompson was represented by his union.

First, on July 12, 2018, Thompson had an informal hearing with his supervisor Shwana Rogers. The union argued Thompson's accident should be deemed "preventable" rather than "chargeable." Rogers nonetheless designated the accident as chargeable, recommended Thompson be fired, and told Thompson, "It was either me or you who would be fired." Third Am. Compl. ¶ 41. Rogers's decision was made at the express or implied direction of her supervisor, Tom Marcucci. Thompson also alleges Rogers failed to provide him with evidence supporting her decision that he violated several SEPTA rules. *See id.* ¶ 45.

Second, on August 13, 2018, Thompson received a formal hearing with Senior Director of Surface Transportation, Tom Marcucci. At the hearing, SEPTA was represented by Thompson's supervisor, Rogers, and the Transportation Manager, George Gates. Thompson, who was represented by his union, argued there was insufficient evidence to charge him with several rule violations as stated by Rogers at the informal hearing. Marcucci, however, upheld the classification of Thompson's accident as chargeable and issued a formal decision terminating Thompson on August 21, 2018. *See id.* ¶ 57.

Thompson alleges Marcucci's decision lacked any explanation, description, or evidentiary basis regarding whether he violated several SEPTA rules. *See id.* ¶ 58. The decision is attached to the Third Amended Complaint as Exhibit B. According to the decision, Marcucci considered the following evidence in reaching his decision: (1) a notice of investigation; (2) the charge sheet against Thompson; (3) a summary of Thompson's defense; (4) Thompson's accident report; (5) the transportation manager's accident investigation report; (6) the video footage of the accident; (7) Thompson's safety and performance card. *See id.* at Ex. B.

Finally, Thompson appealed Marcucci's formal decision and requested a de novo hearing before the Labor Relations Manager. At an August 30, 2018, hearing, Thompson was again represented by his union, and SEPTA was represented by Marcucci. The Labor Relations Manager upheld Thompson's termination. The written decision is attached to the Third Amended Complaint as Exhibit C. In that decision, the Labor Relations Manager stated the safety violations asserted against Thompson and explained that after viewing the video, he agreed that Thompson "proceeded without ensuring his intended pathway was clear." *Id.* at Ex. C.

Thompson alleges the grievance process was tainted by Marcucci's alleged racial discrimination and bias. He specifically alleges Marcucci's attendance at the de novo hearing was self-serving and SEPTA should have been represented by a different manager. *See id.* ¶ 68. Thompson also alleges his termination was upheld despite a lack of evidence or explanation of charges against him. *See id.* ¶ 73–74.

Thompson alleges his firing was premised on racial discrimination because white bus operators who have been in similar accidents were not terminated as a result. Thompson alleges several manners in which white and non-white operators are treated differently with regard to accidents, and also cites to a recent case and opinion in which several instances of discrimination

are listed. *See* Pl.'s Ex. D, *Donaldson v. SEPTA*, No. 17-4475, 2019 WL 801965, at *1 (E.D. Pa. Feb. 21, 2019). Thompson alleges the *Donaldson* case should have placed Jeffrey Kneuppel, the General Manager of SEPTA, on notice of racial discrimination of non-white bus operators. That case, however, involved allegations of sex discrimination, after a female bus driver alleged she was terminated after a bus accident because of her gender. Thompson alleges the nine male comparators listed in *Donaldson* were also white. With regard to his termination and SEPTA's racially discriminatory treatment of non-white bus operators, Thompson alleges Marcucci, Kneuppel, and Michael Liberi, the Chief Officer of Surface Transportation, were final decisionmakers of SEPTA.

On February 10, 2020, Thompson filed a two-count Complaint alleging an equal protection claim and due process claim. He alleges he was fired due to Marcucci's racial bias towards non-white bus operators in violation of the Equal Protection Clause. He also alleges the three-step grievance procedure upholding his firing violated due process because it was improperly influenced and biased by Marcucci. SEPTA first moved to dismiss the Complaint, to which Thompson filed an Amended Complaint in response. SEPTA again moved to dismiss the Amended Complaint. Thompson then filed the Second Amended Complaint. SEPTA moved to dismiss the Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In a November 16, 2020, Memorandum and Order, the Court granted SEPTA's motion and dismissed Thompson's claims without prejudice. Because Thompson could potentially plead facts to address the identified deficiencies, the Court granted him leave to file an amended complaint.

On December 16, 2020, Thompson filed the Third Amended Complaint and added four Individual Defendants: Kneuppel, Marcucci, Rogers, and Liberi. Both SEPTA and the individual

4

Defendants filed motions to dismiss and the Court scheduled oral argument on the motions. Before oral argument, the parties stipulated to dismiss the claims against the Individual Defendants. The Court held oral argument on SEPTA's motion on April 8, 2021.

**DISCUSSION**

The Court will grant SEPTA's motion to dismiss because Thompson fails to properly allege municipal liability against SEPTA and fails to allege he was fired without due process of law. To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The Court must accept all well-pleaded allegations as true and draw all reasonable inferences in Thompson's favor. *See Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 604 (3d Cir. 2015).

Thompson's equal protection claim will be dismissed because he fails to allege SEPTA fired him pursuant to an unconstitutional municipal policy, custom, or practice as required by *Monell v. Departmentt of Social Services. of New York*, 436 U.S. 658, 659 (1978). For § 1983 purposes, SEPTA is treated as a municipality. *See Brown v. SEPTA*, 539 F. App'x 25, 27 (3d Cir. 2013). In order to recover from a municipality under § 1983, a plaintiff must: (1) identify a policy or custom that deprived him or her of a federally protected right, (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and the plaintiff's injury. *See Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action'

issues an official proclamation, policy, or edict." *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (citations omitted). An individual officer's decision can represent the official policy of the municipality only if the officer "possess[es] final authority to establish municipal policy with respect to the action ordered." *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). The fact that an official has discretion in the exercise of a particular functions does not give rise to municipal liability. *See id.* at 481–82. The official must also be responsible for establishing the final policy respecting such activity. *See id.* at 482. A custom, on the other hand, while not an official policy, is a practice that is so permanent and well settled that it is virtually law. *See Berg*, 219 F.3d at 275.

To the extent Thompson alleges SEPTA has a policy of discriminating against non-white bus operators, he has failed to allege there was an official policy of racial discrimination or that his termination was the result of any person with final authority to establish policy with respect to Thompson's termination. Thompson's claim is premised on his termination, which he consistently alleges occurred because of Marcucci's racial bias. Thompson's claim is thus premised on an individual officer's decision which can represent SEPTA policy if Thompson sufficiently alleges Marcucci possesses final authority to establish policy regarding racially discriminatory terminations of bus drivers. Thompson has again failed to do so.

Thompson's amended allegations do not address how Marcucci was a final decisionmaker with regards to a policy of racially discriminatory terminations when his allegations and attachments consistently state Marcucci's decisions were not final. As for the termination at issue in this case, Thompson alleges Marcucci's racially discriminatory termination decision was subsequently reviewed by the Labor Relations Manager and was thus not final or unreviewable. Specifically, SEPTA uses a three-step grievance procedure which includes (1) an informal hearing

6

in which a grievant is made aware of the charges against him and recommended discipline, (2) a formal hearing in which evidence is presented and discipline is imposed, and (3) a de novo hearing before the Labor Relations Manager. Marcucci only conducted the formal hearing at the second step. *See* Third Am. Compl. ¶ 51–58. Thompson's additional allegations on this issue consistently state Marcucci's decisions are reviewed by others. *See, e.g.*, Pl.'s Ex. D (stating Marcucci's termination decision was appealed to the Labor Relations Manager and in arbitration).

Although Thompson alleges Marcucci influenced Rogers, who held his informal hearing at step one, he fails to allege how Marcucci had final unreviewable authority when Marcucci's decision was ultimately reviewed by the Labor Relations Manager at step three. Also, even though Thompson alleges Marcucci's presence at the final hearing tainted the Labor Relations Manager's final decision, he still fails to allege how his presence at the hearing turned him into a final policymaker. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010) (affirming district court's dismissal of *Monell* claim because plaintiff did not "allege what action [an individual] took that could fairly be said to be policy"). Therefore, taking Thompson's allegations as true, he fails to state a claim for municipal liability based on a SEPTA policy of racially discriminatory terminations because Marcucci, who is the alleged final decisionmaker, does not have final decisionmaking authority. *See Kelty v. City of Philadelphia*, No. 16-0306, 2016 WL 8716437, at *4 (E.D. Pa. June 10, 2016) (dismissing *Monell* claim because plaintiff failed to allege conduct by a municipal policymaker).

Thompson also fails to allege whether or how Marcucci takes any actions as a matter of custom to influence the decisionmakers who review his decisions. As for custom, Thompson alleges Marcucci attended the de novo hearing and represented SEPTA, showing his improper influence on the Labor Relations Manager. *See* Third Am. Compl. ¶ 67. These allegations,

7

however, do not sufficiently address how the Labor Relations Manager was influenced by Marcucci's presence or why Marcucci's presence so outweighed the union's representation of Thompson.[1] Regardless of who represented SEPTA at the de novo hearing, there are no alleged facts stating the Labor Relations Manager was influenced by Marcucci or incapable of reaching an impartial decision after hearing the arguments and weighing the evidence. And importantly, accepting Thompson's allegation that Marcucci is racially biased, there are no allegations that Marcucci improperly attends Labor Relations hearings and influences the Labor Relations managers regularly or as a matter of custom. In fact, Thompson alleges Marcucci's attendance and representation of SEPTA at the de novo hearing was "contrary to SEPTA's established custom and practice." Third Am. Compl. ¶ 67. Therefore, these allegations fail to state a claim for municipal liability based on an established custom or practice.

Thompson alternatively alleges SEPTA's former General Manager, Jeffery Knueppel and Chief Officer of Surface Transportation, Michael Liberi were final policymakers and should have known about the racially disparate manner in which SEPTA treated non-white bus operators. However, Thompson fails to allege how Kneuppel and Liberi were involved in his termination at all or how they created policy related to racially discriminatory terminations of bus operators. Thompson only alleges Knueppel is the General Manager and oversees all operations and Liberi is the senior executive in charge of surface transportation.[2] But Thompson must allege that they

---

[1] Thompson also alleges that it was improper for Marcucci to make the formal termination decision and defend that decision at the de novo hearing (allegedly making Marcucci the judge, jury, and prosecutor, *see* Third Am. Compl. ¶ 68). But this fact does not raise an inference of impropriety, especially in light of the fact that Thompson alleges but takes no issue with the fact that Rogers issued an informal decision and defended that position at the formal hearing before Marcucci.

[2] Thompson only alleges Liberi was copied on Marcucci's formal decision upholding Thompson's termination. *See* Third Am. Compl. ¶ 59.

8

are responsible for the specific policy and activity that caused his constitutional injury—terminating non-white bus operators because of their race. *See McTernan v. City of York*, 564 F.3d 636, 659 (3d Cir. 2009) (affirming district court's dismissal of *Monell* claim because plaintiff failed to allege the identified policymaker knew of or directed the unconstitutional policy). Although Thompson alleges Liberi is copied on final employment decisions of surface transportation employees, Thompson only alleges that Liberi acquiesced to Thompson's discriminatory termination and that only Marcucci is responsible for his discriminatory termination. *See* Third Am. Compl. ¶¶ 61–62. But there are at least two other managers who issue final decisions on terminations that Liberi reviews, *see* Third Am. Compl., Ex. D, and there are no allegations of a larger custom of Liberi signing off on discriminatory terminations.

As to Knueppel and Liberi, Thompson failed to allege they were aware of an unlawful policy or custom in the past, and their failure to remedy the unlawful practice caused his termination. Insofar as Thompson alleges Knueppel and Liberi should have known about SEPTA's alleged policy of race discrimination due to a prior discrimination case, the case Thompson references was premised on sex discrimination. And Thompson fails to allege how a prior sex discrimination case put Knueppel and Liberi on notice of a policy or custom related to race discrimination merely because it provided several comparators. Moreover, although Thompson adds allegations that SEPTA officials discussed employees' complaints of racial discrimination with the NAACP and Local 234, he does not allege these conversations revealed an actual unlawful custom or policy which SEPTA has failed to address. While Thompson asserts Knueppel and Liberi "were on full notice of the claims of racial discrimination by bus drivers and other SEPTA employees," he does not present facts to establish these claims were indicative of an official SEPTA policy or unofficial custom.

Although the Court identified these pleading deficiencies in a November 16, 2020, Memorandum, Thompson's amendments still fail to allege a policy, custom, or practice, or that the individual responsible for his termination established the final policy for SEPTA. *See Braddock v. SEPTA*, No. 13-6171, 2014 WL 2764862, at *3–4 (E.D. Pa. June 18, 2014) (dismissing the plaintiff's complaint against SEPTA because the plaintiff failed to allege a formal policy of discrimination or a policy created by a decision or ratification of a decision by an individual with policymaking authority). Also, the allegations regarding SEPTA's alleged custom are undermined by Thompson's allegations that focus on Marcucci's conduct in Thompson's termination and do not give rise to a larger custom regarding racially discriminatory terminations of non-white bus drivers or acquiescence thereto. *See Round v. City of Philadelphia*, No. 19-3513, 2020 WL 2098089, at *9 (E.D. Pa. May 1, 2020) (noting plaintiff's "phraseology" of an alleged policy or custom unaccompanied by supporting facts was insufficient to allege municipal liability under *Monell*). The Third Amended Complaint's factual allegations are thus insufficient to allege municipal liability against SEPTA.

Thompson's due process claim will be dismissed because he fails to allege SEPTA's grievance and arbitration procedure provided insufficient due process. As the Court stated in its November 16, 2020, Memorandum, SEPTA's three-step grievance and arbitration procedure, which Thompson alleges was used to process his termination, is adequate for due process purposes. *See Dykes v. SEPTA*, 68 F.3d 1564, 1571–72 (3d Cir. 1995); *Harris v. Se. Pa. Transp. Auth.*, 205 F. App'x 39, 41 (3d Cir. 2006) (affirming district court's dismissal of due process claim because "SEPTA's grievance/arbitration procedure [is] adequate for due process purposes . . . and there [was] no claim that SEPTA did not follow those procedures"). Thompson fails to allege any new

facts to alter this conclusion. The process alone, even if inherently biased, which Thompson alleges it was, is sufficient for due process. *See Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir. 1983).

And again, to the extent Thompson alleges SEPTA failed to explain the evidence or give him a meaningful opportunity to respond to the charges against him, these allegations are undermined by the grievance documents he attached to the Third Amended Complaint. The grievance documents show each level of the grievance procedure was heard by a different SEPTA manager, and the SEPTA Labor Relations Manager conducted an independent review of the previous grievance step. The grievance documents also list the violations and charges against Thompson and describe Thompson's defense to each one. *See* Third Am. Compl., Exs. A–C. Considering each document summarizes Thompson's defense, the only inference created by the documents is that Thompson was provided the opportunity to be heard and to present evidence and did so. *See id.* Exs. A–C; *id.* at Ex. A (summarizing Thompson's defense to each rule violation). As for the evidence used to support Thompson's termination, the grievance documents explicitly state the evidence the managers relied upon. *See* Ex. B (listing the evidence provided and considered at the formal hearing). Although Thompson alleges the evidence was incomplete or biased, the grievance documents show the managers relied upon a video of the accident, in addition to other evidence, to support Thompson's charges and termination. *See id.* Ex. C ("The Hearing Officer has reviewed the video of the incident and concurs with the Formal Hearing Officer's conclusion . . . ."). There are no facts alleged stating how any evidence was biased. The Third Amended Complaint thus fails to state a claim for deprivation of due process.

**CONCLUSION**

Thompson fails to allege *Monell* liability on his equal protection claim and fails to allege a due process claim. The Court will thus dismiss both claims. Because Thompson has filed four

11

complaints and amended his allegations numerous times but has still failed to state a claim, the Court will not grant leave to amend and will dismiss the Third Amended Complaint with prejudice. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating leave to amend may be denied when there has been a failure to cure deficiencies by previous amendments).

An appropriate order follows.

BY THE COURT:

 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.